UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
**ULTIMATE OPPORTUNITIES, LLC**,                                 :
                                                                 :
                                   Appellant,                    :
                                                                 :       **MEMORANDUM DECISION AND**
                                                                 :       **ORDER**
                – against –                                      :
                                                                 :       20-CV-4927 (AMD)
**THE PLAN ADMINISTRATOR**, *et al.*,                            :
                                                                 :
                                   Appellees.                    :
                                                                 :
---------------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

       The appellant appeals from two orders issued by the United States Bankruptcy Court for

the Eastern District of New York: an August 26, 2020 order directing vacatur of the commercial

premises located at 4921 12th Avenue in Brooklyn, New York, and a September 29, 2020 order

denying the appellant's motion for reconsideration of the vacatur order.  For the reasons that

follow, the Bankruptcy Court's orders are affirmed, and the appeal is dismissed.

## BACKGROUND

       This appeal concerns the property located at 4921 12th Avenue in Brooklyn, New York,

the first floor of which is currently occupied by Yidel's Food Station, a grocery store.  (*See* ECF

No. 13 at 9.)  On December 20, 2018, the owner of the property, 4921 12th Avenue LLC, filed a

Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of New York.

*In re 4921 12th Avenue LLC*, No. 18-47256 (Bankr. E.D.N.Y.); Yehuda Salamon is the principal

of 4921 12th Avenue LLC.  As part of the bankruptcy proceeding, on May 1, 2019, Mark

Frankel, the Plan Administrator and appellee, proposed a Plan of Reorganization ("Plan") on

behalf of mortgagee Galster Funding LLC,[1] which was confirmed by the Bankruptcy Court on July 30, 2019.  (ECF No. 13-1 at 8, 46).  The Plan provided that "[a]ny and all pre-petition leases [not assumed] . . . shall be deemed rejected by the Debtor," and that the "Sale of the Property shall be conducted pursuant to the Proponent's Plan of Reorganization free and clear of liens, claims, commercial leases not assumed under the Plan, and encumbrances."  (*Id.* at 27, 32.)  According to the appellee, Salamon represented at the 341 meeting of creditors that there were no existing commercial leases on the property.  (ECF No. 17 at 18.)

On December 27, 2019, the appellee moved to evict Yidel's—the occupant of the commercial space at the property—because "[b]idding on the Property has been chilled by the presence of the ground floor occupant."  (ECF No. 13-1 at 60.)  The appellee asserted that Salamon had represented that there were no existing leases, and that in any event "the Plan Administrator has the right to exercise the Debtor's claims and cause of action to evict the ground floor tenant since there is no lease nor record of rent payment."  (*Id*. at 66, 68.)  On January 17, 2020, the debtor submitted an email from the appellant, Ultimate Opportunities, LLC ("Ultimate"); in that email, Ultimate's principal—Uziel Frankel—asserted that Ultimate had a lease with the debtor, and was not notified of the bankruptcy.  (*Id*. at 70.)  The appellant also attached to the email a lease dated November 1, 2016 between Ultimate and 4921 12th Avenue LLC.[2]  (*Id*. at 71.)

---

[1] On August 30, 2016, Salamon, on behalf of 4921 12th Avenue LLC, obtained a $6.5 million loan from Galster Funding LLC, secured by a mortgage on the property.  (ECF No. 11-1 at 225, 246-73.)  Galster obtained a judgment of foreclosure and sale on August 20, 2018 in the New York Supreme Court, Kings County.  *See Galster Funding LLC v. 4921 12th Avenue LLC, et al.*, Index No. 500818/2017 (N.Y. Sup. Ct.).  According to the appellee, the debtor filed for bankruptcy on the eve of the foreclosure sale.  (ECF No. 17 at 10.)

[2] The only previously existing lease was a 5-year lease between Yidel's Fresh Food Station, LLC and 4921 12th Avenue LLC, dated January 1, 2016, and with a monthly rent of $26,250.  (ECF No. 11-1 at 226, 275-98.)

The appellee disputes the validity of the appellant's lease, citing Uziel Frankel's long-term association with Salamon in other questionable real estate ventures and bankruptcy proceedings.[3]  The appellee maintains that Frankel and Salamon have "interchangeably claimed to be owners/managers" of corporate entities "to fit the narrative of whatever legal dispute they are fighting."  (ECF No. 17 at 16.)

According to the appellee, when Salamon obtained the Galster mortgage, he presented a five-year lease dated January 2016 with Yidel's Fresh Food Station for $26,000 a month.  (*Id.* at 18.)  However, as part of the bankruptcy proceeding, Salamon represented that there were no commercial leases.  The appellant's lease—purportedly signed about ten months after the Yidel's lease, and apparently on terms requiring the appellant to pay $17,000 less per month than the Yidel's lease—was not disclosed until after the eviction motion was filed.[4]  (*Id.*)

Then Chief Judge Carla E. Craig[5] of the Bankruptcy Court conducted a hearing on the eviction motion on January 22, 2020; the appellant did not appear.  (ECF No. 11-1 at 4-5.)  On March 18, 2020, the appellant's counsel filed a notice of appearance in the bankruptcy proceeding,[6] *4921 12th Avenue LLC*, ECF No. 126, but did not file any objection to the eviction

---

[3] Sometime before September 2017, Salamon disbursed a portion of the Galster loan proceeds to RS Old Mill LLC, which he also controlled.  (ECF No. 17 at 14.)  Old Mill used the proceeds to make a down payment on real property in Rockland County, New York, and subsequently filed for bankruptcy.  (*Id.*)  Uziel Frankel filed a proof of claim in Old Mill's bankruptcy case on behalf of Lone Pine Associates, LLC, but in a separate lawsuit, Lone Pine asserted that Salamon was its management.  (*Id.* at 15-16.)

[4] The appellee also cites state court filings reflecting that Yidel's was the lessee of the commercial premises at 4921 12th Avenue, and notices posted at the property that state the store operates under licenses granted to Yidel's.  (*Id.* at 19.)

[5] Judge Craig retired on October 1, 2020.

[6] The appellant's counsel also filed a notice of appearance in an adversary proceeding brought by the appellee to recover unpaid rent on March 23, 2020.  *Frankel v. Salamon et al.*, No. 19-1120 (Bankr. E.D.N.Y.), ECF No. 60.  The appellant filed a motion to dismiss the adversary proceeding two days later, and a reply on May 4, 2020.  *Id.*, ECF Nos. 61 & 64.  It also appeared at a hearing on July 8, 2020 in the adversary proceeding.  On August 25, 2020, the appellant's counsel moved to withdraw.  *Id.*, ECF No. 80.  That motion was granted on September 28, 2020.  *Id.*, ECF No. 87.

motion.  On August 12, 2020, Chief Judge Craig held an additional hearing on the eviction

motion, at which the appellant appeared and argued that it was not notified of the Plan and

explained that it had been attempting to reach a settlement with the other parties.  (ECF No. 13-1

at 157, 164-68.)  Chief Judge Craig emphasized that "[t]his is a case with a confirmed plan," and

noted that the appellant had "done nothing" to protect its interests; for example, it had not made a

"motion in this case to indicate [its] right to the tenan[cy] or to set aside the orders that . . .

provided that the property was both free and clear of [the appellant's] interest in the property."

(*Id*. at 167.)  On August 26, 2020, Chief Judge Craig entered an order directing vacatur of the

commercial premises.  (*Id*. at 3.)  The appellant filed a motion seeking reconsideration of that

order on September 9, 2020, and filed a supplement to its motion on September 16, 2020.  (*Id*. at

90, 125.)  Chief Judge Craig denied the motion on September 29, 2020.  (*Id*. at 5-6.)

The appellant filed this appeal on October 14, 2020 (ECF No. 1), and requested a

temporary restraining order and a stay of the vacatur order on October 19, 2020 (ECF Nos. 3 &

4).  I granted the temporary restraining order on October 20, 2020.  On February 8, 2021, I

granted the appellant's motion to stay the vacatur order pending this appeal, and, as a condition

of the stay, the appellant was directed to post a bond in the amount of $618,000 by February 22,

2021.  The appellant did not post the bond, and I lifted the stay on March 2, 2021.

## STANDARD OF REVIEW

District courts have appellate jurisdiction over "final judgments, orders, and decrees"

entered in bankruptcy court.  28 U.S.C. § 158(a).  On appeal, a district court reviews the legal

conclusions of a bankruptcy court "*de novo* and its factual findings for clear error."  *Wenegieme*

*v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018) (citing *In re*

*Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)).  "A finding is 'clearly

erroneous' when, on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).  The district court, however, remains limited by the jurisdictional confines of Article III.  *See Gonzalez v. Musso*, No. 08-CV-3026, 2008 WL 3194179, at *1 (E.D.N.Y. Aug. 6, 2008).

A district court reviewing a bankruptcy court's order on appeal "may affirm . . . on grounds different from those relied on by the court below." *In re Fischer*, No. 01–CV–2717, 2001 WL 1923359, at *10 n.17 (E.D.N.Y. Aug. 21, 2001) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997)); *see Mendelsohn v. Ross*, 251 F. Supp. 3d 518, 525 n.7 (E.D.N.Y. 2017) ("Courts reviewing appeals of orders may affirm on other grounds." (citing *Davis v. New York*, 106 F. App'x 82, 83 (2d Cir. 2004))); *In re Ocean Rig UDW Inc.*, 585 B.R. 31, 35 (S.D.N.Y. 2018) ("The Court may affirm on any ground that finds support in the record and need not limit its review to the bases raised or relied upon in the decisions below.").

A district court reviews the bankruptcy court's rulings on motions for reconsideration under Federal Rules of Civil Procedure 59 and 60 for abuse of discretion.  *In re Emmons-Sheepshead Bay Dev., LLC*, 662 F. App'x 100, 103 (2d Cir. 2016); *In re Indu Craft Inc.*, No. 11-CV-5996, 2012 WL 3070387, at *8 (S.D.N.Y. July 27, 2012), *aff'd*, 580 F. App'x 33 (2d Cir. 2014).

## DISCUSSION

## I.      Standing

"To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the

challenged order of the bankruptcy court." *Yagman v. Kittay*, 670 F. App'x 743 (2d Cir. 2016) (quoting *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997)). The "aggrieved person" standard is "stricter than Article III's 'injury in fact' test for standing." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (quoting *Gucci*, 126 F.3d at 388).

The appellee argues that "[t]o be an 'aggrieved person,' a party must appear in the bankruptcy court and object to the orders it seeks to challenge on appeal," and that "[b]ecause it did not participate or raise objections below, the Appellant lacks standing to challenge the Bankruptcy Court's Vacate Order." (ECF No. 17 at 7-8.) The Second Circuit has not adopted the "appearance and objection" prerequisites to appellate standing.[7] In any event, Chief Judge Craig's August 26, 2020 vacatur order was based on "the hearing[s] held before [that court] on January 22, 2020 and August 12, 2020." (ECF No. 11 at 315.) The appellant appeared and objected to the eviction motion at the August 12, 2020 hearing, which establishes standing. (*See* ECF No. 11-9 at 1, 12-17.)

## II.   The Bankruptcy Court's Jurisdiction and Authority

The appellant argues that this Court should reverse Chief Judge Craig's vacatur order on the theory that she did not have post-confirmation jurisdiction to enter the order. Alternatively, the appellant contends that the eviction motion was a non-core proceeding or constituted a *Stern*

---

[7] None of the cases the appellee cites establish that the "appearance and objection" prerequisites apply. The appellee cites three out-of-circuit cases—*Matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992), *In re Com. W. Fin. Corp.*, 761 F.2d 1329, 1335 (9th Cir. 1985) and *In re Weston*, 18 F.3d 860, 864 (10th Cir. 1994)—and two cases from the Western District of New York, both involving parties who attempted to intervene and be heard on appeal without first seeking to intervene in the bankruptcy court—*Sandra Cotton, Inc. v. Bank of N.Y.*, 87 B.R. 272, 274 (W.D.N.Y. 1988) and *D.A. Elia Constr. Corp. v. Damon and Morey, LLP*, No. 04-CV-975A, 2006 WL 1720361, at *3 (W.D.N.Y. 2006). (*See* ECF No. 17 at 7.)

claim, *see Stern v. Marshall*, 564 U.S. 462 (2011), and therefore the Bankruptcy Court could not enter a final order on the motion.

### a.  Post-Confirmation Jurisdiction

A bankruptcy court has post-confirmation jurisdiction if (1) the matter has "a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement," and (2) the plan "provide[s] for the retention of jurisdiction over the dispute."  *In re Olympia Off. LLC*, 585 B.R. 661, 668 (E.D.N.Y. 2018) (quoting *In re Gen. Media, Inc.*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005)) (internal quotation marks omitted); *In re Ener1, Inc.*, 558 B.R. 91, 95–96 (Bankr. S.D.N.Y. 2016) ("Broadly speaking, the proceeding must affect some aspect of the plan—its meaning, its implementation or its consummation—to come within the [Bankruptcy] Court's post-confirmation jurisdiction." (quoting *General Media*, 335 B.R. at 74)).

The confirmed Plan provided that the debtor's property at 4921 12th Avenue, Brooklyn was to be sold, and the sale proceeds distributed to creditors.  In addition, the Plan provided that the appellee had the "duty to implement the sale of the Property."  (ECF No. 13-1 at 24.)  The appellee sought the eviction of the occupants of the first-floor commercial space pursuant to 11 U.S.C. §§ 105 and 1142,[8] explaining that "bidding has been chilled because potential purchasers are unwilling to pay a fair market price since they fear Mr. Salamon will fail to vacate."  (*Id*. at

---

[8] 11 U.S.C. § 105(a) provides that the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 1142(b) provides that the Bankruptcy Court "may direct the debtor and any other necessary party . . . to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan."  In the same motion, the appellee sought to replace the management of the property with a professional third-party manager, which would require modification of the Plan pursuant to 11 U.S.C. § 1127.  (ECF No. 13-1 at 60.)

60, 67.)  At the January 22, 2020 hearing, the appellee explained his concerns: "We need it done quickly, otherwise we are never going to get this property sold and we've been holding off, we haven't been able to sell since July because of this."  (ECF No. 11-1 at 16.)  At the August 12, 2020 hearing, Chief Judge Craig pointed out that "[t]his is a case with a confirmed plan," which "provided that [sale of] the property was both free and clear of [the appellant's] interest in the property."  (ECF No. 13-1 at 167.)  Accordingly, the motion to evict the first-floor occupants affected the interpretation, implementation and consummation of the reorganization plan.

Moreover, the confirmed Plan expressly provided for the Bankruptcy Court's jurisdiction over proceedings "[t]o enforce the Confirmation Order, the final decree, and all injunctions therein."  (ECF No. 13-1 at 28); *see In re Texaco, Inc.*, 505 F. App'x 77, 80 (2d Cir. 2012) (holding that the bankruptcy court could direct a creditor to dismiss claims discharged by the Confirmation Order where "the plan of reorganization provided that the bankruptcy court retained jurisdiction, *inter alia,* to take any action to resolve any disputes arising out of or relating to any claim, and to construe and to take any action to enforce the plan").  Accordingly, the Bankruptcy Court had post-confirmation jurisdiction to address the eviction motion.

### b.  Core and Non-Core Proceedings

28 U.S.C. § 157(b) provides that "[p]roceedings arising under title 11, or arising in a case under title 11, are deemed core proceedings" over which "bankruptcy courts retain comprehensive power to resolve claims and enter orders or judgments."  *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) (internal quotation marks and citations omitted).  "Proceedings 'arising under' the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law," whereas "[p]roceedings 'arising in' a bankruptcy case are those claims that are not based on any right expressly created by [the

Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy." *In re Robert Plan Corp.*, 777 F.3d 594, 596-97 (2d Cir. 2015) (internal quotation marks and citations omitted). A bankruptcy court also has jurisdiction to hear a non-core proceeding that "is otherwise related to a case under [the Bankruptcy Code]." *Id.* at 597 (citing 28 U.S.C. § 157(c)(1)). However, for non-core proceedings, "the bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court, which will finally determine the matter." *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) (citing 28 U.S.C. § 157(c)(1)).

According to the appellant, the appellee's arguments in support of the eviction motion "go to the assertion about the Lease's existence and rent payment," which are "classic state law issues that could exist independently of the bankruptcy." (ECF No. 13 at 29.) The record does not support that interpretation. Indeed, the eviction was sought not for non-payment of rent, but because the building was being sold to pay the debtor's creditors as part of the confirmed Plan. For that reason, when the debtor announced that the appellant had a lease at the January 2020 hearing, the appellee responded by citing the Plan and bankruptcy law. He asserted that the Plan provided that the property would be sold free and clear of commercial leases, and that any lease was rejected under the Plan. (ECF No. 13-1 at 151-52.) At the August 2020 hearing, Chief Judge Craig found that the vacatur order was appropriate because there was a "confirmed plan" that "provided that the property was both free and clear of" the appellant's lease. (*Id*. at 167.) Hence, the eviction proceeding could not have existed outside of the bankruptcy case because the appellee sought eviction based on a particular interpretation of the Plan, and his motion required

the Bankruptcy Court's adjudication of federal bankruptcy law related to lease rejection and "free and clear" sales.[9]

The cases that the appellant cites do not compel a different result, since those actions, brought pursuant to state law, could be maintained outside of the bankruptcy cases.  Thus, *In re Riverside Nursing Home* involved an eviction action brought pursuant to New York State Real Property Action and Proceedings Law that was removed to federal district court, 144 B.R. 951, 954 (S.D.N.Y. 1992); the federal court held that the eviction action was not a core proceeding because it was "a state law cause of action that, absent a bankruptcy, would have been advanced in the State Court."  *Id.* at 955.  In *In re Taub*, the debtor-landlord commenced an adversary proceeding against tenants to recover unpaid rent or an order of eviction, and the tenants countered that the debtor-landlord had violated New York Rent Stabilization Law.  417 B.R. 186, 189 (Bankr. E.D.N.Y. 2009).  The court found that the action was not a core proceeding because "the claims asserted in the Complaint and Counterclaims . . . have their roots in the Rent Stabilization Law, and could arise outside the context of this bankruptcy case."  *Id.* at 196.  In this case, after the debtor announced that the appellant had a lease, the appellee cited provisions of the confirmed Plan and bankruptcy law to support the eviction motion.  Accordingly, it was a core proceeding in which the Bankruptcy Court could issue final orders and judgments.  *See In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011) ("The Second Circuit and other bankruptcy courts in this district have ruled that a bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders.").

---

[9] The appellant appears to concede that the eviction implicates bankruptcy law, as it argues that "the Bankruptcy Code precludes Ultimate's eviction anyway."  (ECF No. 13 at 29.)

c. *Stern* **Claims**

In *Stern v. Marshall*, 564 U.S. 462 (2011), the United States Supreme Court held that "identifying a claim as 'core' or 'non-core' under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate the matter." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 464 (S.D.N.Y. 2011). "[A] bankruptcy court cannot enter a final order unless either the action at issue 'stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'" *In re Kirwan Offs. S.a.r.l.*, 592 B.R. 489, 510 (S.D.N.Y. 2018) (quoting *Stern*, 564 U.S. at 499), *aff'd sub nom. In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99 (2d Cir. 2019).[10] However, *Stern*'s holding is a "'narrow' one, and involved 'one isolated respect' of the Bankruptcy Act, and did not 'meaningfully change[ ] the division of labor' between bankruptcy courts and district courts." *Adelphia Recovery Tr. v. FLP Grp., Inc.*, No. 11-CV-6847, 2012 WL 264180, at *2 (S.D.N.Y. Jan. 30, 2012) (quoting *Stern*, 564 U.S. at 502); *In re Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012) ("The Supreme Court in *Stern* indicated that its holding was a narrow one."). Though *Stern* involved a state law counterclaim for tortious interference, courts in this circuit have applied its ruling to fraudulent transfer and preferential transfer claims. *See In re Lyondell Chem. Co.*, 467 B.R. 712, 720 (S.D.N.Y. 2012) (holding that "fraudulent conveyance actions . . . are quintessentially suits at common law that more nearly resemble state-law contract claims," and are therefore "matter[s] of private right." (internal quotation marks and citations omitted)); *Pryor v. Tromba*, No. 13-CV-676, 2014 WL 1355623, at *5 (E.D.N.Y. Apr.

---

[10] Bankruptcy courts may also "decide *Stern* claims submitted to them by consent." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015). Further, a bankruptcy court may hear proceedings involving *Stern* claims and "submit proposed findings of fact and conclusions of law to the district court." *In re Khan*, No. 10-CV-46901, 2014 WL 10474969, at *5 (E.D.N.Y. Dec. 24, 2014) (quoting *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014)) (internal quotation marks omitted).

7, 2014) ("Claims based on preferential transfers and alleged fraudulent conveyances . . . do not

fall under the public rights exception to *Stern*.").

Again citing *Riverside* and *Taub*, the appellant claims that the eviction motion "is plainly

a *Stern* claim beyond the Bankruptcy Court's jurisdiction because it only implicates private, state

law property rights, which do not arise 'from the bankruptcy itself.'"  (ECF No. 13 at 30.)

However, as explained above, the appellee moved for eviction not on the basis of a state law

claim, but on the provisions of the confirmed Plan, as well as federal bankruptcy law relating to

lease rejection and "free and clear" sales.  Cases in which *Stern* applied "are far removed from

the instant situation," which concerns plan implementation "rather than the entry of final

judgment on a common law claim."  *Quigley*, 676 F.3d at 52 (holding that the bankruptcy court

had constitutional authority to stay litigation); *see also In re Relativity Fashion, LLC*, No. 15-

11989, 2016 WL 3212493, at *16 (Bankr. S.D.N.Y. June 1, 2016) (stating that "it cannot be the

case that *Stern v. Marshall* bars [the court] from enforcing [its] own prior orders," and that the

court's "approval of the plan . . . would be meaningless if [it] could not enforce section 1142(b)"

to compel certain actions), *subsequently aff'd*, 696 F. App'x 26 (2d Cir. 2017).  In this case, the

eviction motion stems from the bankruptcy case; accordingly, the Bankruptcy Court had

constitutional authority to decide the motion.

## III.    The Bankruptcy Court's Findings of Fact and Law

### a.    § 365(h) Continued Possession

Section 363(f) of the Bankruptcy Code "authorizes the trustee to sell property of a

bankrupt's estate 'free and clear of any interest in such property.'"  *Dishi & Sons v. Bay Condos*

*LLC*, 510 B.R. 696, 698 (S.D.N.Y. 2014) (quoting 11 U.S.C. § 363(f)).  Section 365(h) provides

that if "the trustee rejects an unexpired lease of real property under which the debtor is the

lessor," "if the term of such lease has commenced, the lessee may retain its rights under such lease"—including "possession"—"that are in or appurtenant to the real property for the balance of the term of such lease."  11 U.S.C. § 365(h).  Unlike courts in other circuits, courts in this circuit have held that while "the lessee may retain its appurtenant rights notwithstanding the trustee's rejection of the lease" pursuant to Section 365(h), "Section 363(f), in turn, authorizes the trustee to extinguish the lessee's appurtenant rights."  *Dishi*, 510 B.R. at 698-99; *see also In re Downtown Athletic Club of New York City, Inc.*, No. M-47, 2000 WL 744126, at *4 (S.D.N.Y. June 9, 2000) ("[W]hen the debtor-lessor sells property subject to a lease free and clear of that lease pursuant to Section 363(f), the Court will not apply Section 365(h)."); *In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at *7 (Bankr. S.D.N.Y. May 21, 2010).

In concluding that "[c]ourts have regularly found that the protections of 11 U.S.C. § 365(h) override any ability of a debtor to sell real property 'free and clear' under § 363(f) of the Bankruptcy Code," the appellant cites only cases from circuits that adopt a different interpretation.  (ECF No. 13 at 33-36); s*ee In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283 (Bankr. N.D. Ill. 1996); *In re Haskell, L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005); *In re Zota Petroleums, LLC*, 482 B.R. 154 (Bankr. E.D. Va. 2012).  In the Second Circuit, a "free and clear" sale, as provided by the Plan here, extinguishes a lessee's Section 365(h) appurtenant rights.  Therefore, the appellant's argument fails.

**b.  Adversary Proceeding**

Federal Rule of Bankruptcy Procedure 7001 requires that an adversary proceeding be brought "to obtain an injunction or other equitable relief," except for when the "plan provides for the relief."  According to the appellant, the eviction motion "suffered from a fatal procedural defect" because it was not brought as an adversary proceeding.  (ECF No. 13 at 39.)  However,

courts can choose "to resolve the dispute, rather than delay its adjudication, and proceed to the merits [t]herein" when "neither (party) has raised this procedural defect." *In re Amodio*, 155 B.R. 622, 622 n.1 (Bankr. N.D.N.Y. 1993) (quoting *In re Centolella,* 142 B.R. 624, 625 n.1 (Bankr. N.D.N.Y. 1992)); *see also In re Capitol-York Const. Corp.*, 43 B.R. 52, 55 (Bankr. S.D.N.Y. 1984) (proceeding to the merits without directing a party to file an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001, in part because the parties did not raise the procedural issue).

The appellant was aware of the bankruptcy at least by January 2020, and in March 2020, its counsel appeared in the bankruptcy proceeding. The appellant actively defended itself in the adversary proceeding to recover unpaid rent, but did not object to the confirmed Plan or the eviction motion in the main bankruptcy proceeding. Nor did the appellant's counsel raise any procedural concerns five months later at the August 2020 hearing. Indeed, it was only after the vacatur order was entered that the appellant argued for the first time that the eviction motion should have been brought in an adversary proceeding. (ECF No. 13-1 at 93-94.) Because the appellant did not raise any objection at the August 2020 hearing or in the months leading up to it, the eviction motion was properly adjudicated in the Bankruptcy Court.

### c. *Res Judicata*

The appellant claims that *res judicata* precluded the appellee from bringing the eviction motion because he did not preserve the right to bring the motion in the Plan. To determine whether *res judicata* bars a subsequent action in the bankruptcy context, a court must consider whether: "1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same;" it must also consider "whether an independent judgment in a separate proceeding would

impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006) (quoting *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997)).  A bankruptcy court's "confirmation order constitutes a final judgment on the merits by a court of competent jurisdiction." *Farahzad v. Laws. Title Ins. Co.*, No. 10-CV-6010, 2012 WL 4344325, at *3 (E.D.N.Y. Sept. 21, 2012). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  The "critical question for *res judicata* purposes is whether the party could or should have asserted the claim in the earlier proceeding." *Layo*, 460 F.3d at 292 (internal quotation marks and citation omitted).  *Res judicata* will not bar a claim that "is reserved in a plan or disclosure statement."  *In re Futter Lumber Corp.*, 473 B.R. 20, 29 (E.D.N.Y. 2012) (citing *In re Am. Preferred Prescription, Inc.*, 266 B.R. 273, 277 (E.D.N.Y. 2000)).

In this case, Chief Judge Craig's July 30, 2019 confirmation order approving the Plan constitutes a final judgment on the merits by a court of competent jurisdiction.  The appellant's claim that the appellee "was barred from seeking the relief in the Eviction Motion . . . because the Plan failed to preserve this claim upon Plan confirmation" is not persuasive.  (ECF No. 13 at 39.)  The Plan rejected the appellant's lease and provided that the property would be sold free and clear of any unassumed commercial leases; the appellee's eviction motion was made pursuant to those provisions.  Therefore, the appellee's cause of action did not accrue until after

the Plan was confirmed, and could not have been asserted before the confirmation order.

Accordingly, *res judicata* did not bar the appellee's eviction motion.

### d.  § 363(e) Adequate Protection

Section 363(e) of the Bankruptcy Code provides that "at any time, on request of an entity

that has an interest in property used, sold, or leased . . . by the trustee, the court, with or without a

hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate

protection of such interest."  11. U.S.C. § 363(e).  Adequate protection may be provided as "cash

payment," "an additional or replacement lien," or "such other relief . . . as will result in the

realization by such entity of the indubitable equivalent of such entity's interest in such property."

*Id*. § 361.  In the context of sales "free and clear" of leasehold interests, "the lessee's sole

recourse is to request 'adequate protection,' which may or may not amount to continued

possession."  *Dishi*, 510 B.R. at 701.

The appellant argues that it "had a right to 'adequate protection' of its leasehold interest

. . . both at the time that the Bankruptcy Court entered the Vacatur Order and when [the

appellant] requested adequate protection in the Reconsideration Motion."  (ECF No. 13 at 36.)

The appellant concedes that it requested adequate protection for the first time in its motion for

reconsideration, after entry of the vacatur order.  (*See id.* at 13, 16, 36, 38-39.)  A court can

provide adequate protection only "on request" of an interested party.  The Bankruptcy Court had

no obligation to grant adequate protection before the appellant requested it.

According to the appellant, the "Bankruptcy Court ignored the plain meaning of the

statute by concluding that Ultimate made its request for adequate protection *too late*," even

though "Section 363(e) clearly permitted Ultimate's request for 'adequate protection' with the

Reconsideration Motion."  (ECF No. 13 at 38-39.)  But the cases that the appellant cites are

distinguishable.  The bankruptcy court in *In re Southcreek Dev., LLC*, held that the interested party's motion for adequate protection was not "premature"—in other words, the issue in that case was whether the party moved too early, as opposed to too late.  No. 10-90327, 2011 WL 44703, at *1-2 (Bankr. C.D. Ill. Jan. 6, 2011).  In *Dishi*, the interested party requested adequate protection before the bankruptcy court issued an order approving the "free and clear" sale of the property and confirming the plan; the timeliness of the request was not an issue.  510 B.R. at 700.

It is undisputed that the appellant requested adequate protection after the entry of the order directing the appellant to vacate the premises, and months after it knew of the confirmed Plan that provided for a "free and clear" sale.  A party with a valid leasehold interest clearly cannot request adequate protection "at any time" in the literal sense, for instance years after a "free and clear" sale, because that would defeat one of the chief purposes of bankruptcy laws: "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period."  *In re Ades & Berg Grp. Invs.*, 550 F.3d 240, 244 (2d Cir. 2008) (quoting *In re First Cent. Fin. Corp.*, 377 F.3d 209, 217 (2d Cir. 2004)).  At least one bankruptcy court has imposed a time limit for requesting adequate protection.  *See In re Ne. Chick Servs., Inc.*, 43 B.R. 326, 331-32 (Bankr. D. Mass. 1984) ("A creditor may ask for adequate protection at any time, but the time frame considered is that of any time up to and including the Court's order allowing the use of the secured property, and not after such order has been entered."); *accord. I.R.S. v. Patriot Contracting Corp.*, No. 06-CV-2133, 2007 WL 433392, at *4 (D.N.J. Feb. 7, 2007).  Other courts have considered the timeliness of requests for adequate protection in the context of a secured creditor seeking adequate protection payments for depreciation in the value of collateral.  *See In re Big3D, Inc.*, 438 B.R. 214, 225 (B.A.P. 9th Cir. 2010) (holding that the

bankruptcy court properly considered a creditor's delay in filing its motion for retroactive adequate protection); *In re Greives*, 81 B.R. 912, 965 (Bankr. N.D. Ind. 1987) (recognizing that "there is imposed upon such a secured creditor the obligation to be diligent in requesting adequate protection").

In this case, the debtor represented that the appellant had only learned of the bankruptcy proceeding in January 2020, and the appellant's counsel appeared in the proceeding in March 2020.  It did not assert its right to adequate protection in the following months.  Nor did the appellant's counsel request adequate protection at the August 12, 2020 hearing on the eviction motion.  Instead, the appellant waited until September 16, 2020, after the Bankruptcy Court entered the vacatur order, to raise the issue.[11]  While the appellant "may ask for adequate protection at any time," "the time frame considered is that of any time up to and including the [Bankruptcy Court's] order" directing the appellant to vacate the property, "and not after such order has been entered."  *Ne. Chick Servs.*, 43 B.R. at 331-32.  Accordingly, the appellant's request for adequate protection was not timely.

### e.  No Factual Basis for Vacatur

Even assuming that the appellant had shown that it was party to a valid lease, had paid rent and had satisfied all other lease obligations, the Bankruptcy Court correctly determined that any lease was rejected by operation of the confirmed Plan and relevant provisions of the Bankruptcy Code, and the property would be sold free and clear of the appellant's appurtenant rights.  The Bankruptcy Court also properly denied the appellant's untimely request for adequate

---

[11] The appellant failed to raise adequate protection in its initial motion for reconsideration (ECF No. 13-1 at 90-94), and requested adequate protection for the first time in its supplemental motion for reconsideration (ECF No. 13-1 at 133).

protection.  Accordingly, I need not address whether the appellee had a factual basis for its eviction motion.

## IV.    Reconsideration

"Motions to vacate, alter, or reconsider a bankruptcy court's decisions or findings are governed by Federal Rules of Civil Procedure . . . 59(e), and 60(b), which apply to [bankruptcy] proceedings through Federal Rules of Bankruptcy Procedure . . . 9023, and 9024, respectively." *Emmons-Sheepshead Bay Dev.*, 662 F. App'x at 103.  A court may grant a Rule 59(e) motion to "alter or amend [a] judgment to correct a clear error of law or prevent manifest injustice."  *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (quoting *Schwartz v. Liberty Mut. Ins. Co.,* 539 F.3d 135, 153 (2d Cir. 2008)).  Rule 60(b) permits a court to relieve a party from a final judgment in certain circumstances, including "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." (citations and quotation marks omitted)).

The appellant claims that the Bankruptcy Court should have granted its motion for reconsideration because the arguments raised are "clearly correct" and "it is more important to get the issue right."  (ECF No. 13 at 44.)  However, as discussed above, none of the appellant's

arguments have any merit, and therefore, the Bankruptcy Court did not abuse its discretion in denying the appellant's motion for reconsideration.

## CONCLUSION

For the reasons stated above, the Bankruptcy Court's orders are affirmed, and this appeal is dismissed.  The Clerk of Court is respectfully directed to close this case.[12]

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        September 27, 2021

---

[12] Upon the issuance of this order, this Court lacks jurisdiction to consider the appellee's motion for a writ of assistance.  The appellee may seek a writ of assistance from the Bankruptcy Court.